FILED COPY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| DANIEL S. KAHN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>FORTIS INSURANCE COMPANY, et al.,<br><br>              Defendants. | 1:05-cv-105-WSD |

## ORDER

This matter is before the Court on Plaintiff Daniel S. Kahn's Motion to Remand [10] and Motion for Attorney Fees [16].[1]

## I.    BACKGROUND

On November 24, 2004, Plaintiff filed this action in the State Court of Fulton County, on behalf of himself and all others similarly situated,[2] against Defendants

---

[1] This matter is also before the Court on Plaintiff's Motion to File Corrected Brief in Opposition to Defendants' Motions to Dismiss [13]. The corrected brief was filed before the deadline and on the same day as the originally filed brief.

[2] Plaintiff purports to bring this action on behalf of himself and all persons who purchased similar insurance coverage by or through the Defendants from January 1, 1993 to the date of class certification. (Compl., attached as Exh. A to

Suburban General Agencies, Inc.,[3] Robert Marcus and Marla Nelson (collectively

referred to as the "Agent Defendants"), and Defendants Fortis Insurance Company,

Assurant, Inc., Fortis Benefits Insurance Company, and Rogers Benefit Group,

Inc. (collectively referred to as the "Fortis Defendants").  Plaintiff claims that on

April 29, 1996, the Agent Defendants sold him an Upper Midwest Employers

Group ("UMEG") small group health insurance plan which was administered by the

Fortis Defendants and underwritten by Fortis Benefits Insurance Company.

(Compl. ¶¶ 25, 33, 63.)  The UMEG policy is titled "Individual Comprehensive

Major Medical Insurance," but the policy is issued under a "Certificate of Group

Insurance."  (See UMEG Policy, attached as Exh. 1 to Compl., at 2, 4.)  The

UMEG policy states that the administrator may change the premium rates according

to the following provisions:

> Our Rights to Change Premium Rate
>
> 1.    We may recalculate the premium rate or rates
>       at any time on or after the first Policy
>       Anniversary.

---

Notice of Removal [1], ¶ 90.)

[3] Plaintiff amended his complaint to substitute Suburban General Agencies,
Inc. for Phoenix Associates, Inc.

> 2.    We may recalculate the premium rate or rates on any date when Our liability under the Policy is changed.
>
> The rates will not be changed in accordance with 1. above more often than once in any period of 6 consecutive months. We will give the Policyholder at least 31 days advance written notice of any increase in the premium rate or rates in accordance with 1. above. Notice is considered as given when delivered or mailed to the last known address of the Policyholder.

(Id. at 46.)

Plaintiff alleges that all Defendants, including the Agent Defendants,

> through their consistent course of conduct and concerted misrepresentations, failure to disclose accurate information, and conscious indifference to the accuracy of the information they disclosed, led the Plaintiff . . . to believe that "UMEG" was a true and lawful group health insurance policy and that renewal premiums would be adjusted as customary for other group health insurance policies and in compliance with Georgia law.

(Compl ¶ 133.) Plaintiff asserts that contrary to these alleged misrepresentations,

the Fortis Defendants "engaged in re-underwriting individuals on the basis of their

individual health or individual claims history." (Id. ¶ 35.) Plaintiff claims he

became ill and required insurance benefits, and Defendants illegally altered his

health coverage and increased his renewal premiums. (Id. ¶¶ 45-46.) Specifically,

Plaintiff claims in May of 2001, his premium was $688.77, but by May of 2002 his premium had risen to approximately $959.75. (Id. ¶ 68.)

Plaintiff claims the "collective and conspiratorial actions of the Defendants, including the Resident Defendants, resulted in the issuance and delivery of small group health insurance plans that were procured by fraudulent and deceptive means," in violation of Georgia law. (Pl.'s Mot. to Remand at 2.) Plaintiff asserts six claims against the Defendants: (1) private right of action for breach of statutory duty; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) conspiracy; and (6) fraud through uniform, written misrepresentations.

On January 12, 2005, the Fortis Defendants removed this case to this Court, asserting this Court has jurisdiction under both diversity of citizenship and federal question jurisdiction. (Notice of Removal [1].) Defendants contend that complete diversity exists because the only non-diverse Defendants, the Agent Defendants, were fraudulently joined to defeat federal jurisdiction, and that this case presents a federal question because Plaintiff's claims "may fall under the auspices of the Employee Retirement Income Security Act ("ERISA")." (Id. ¶ 38.) On January 25, 2005, Plaintiff filed his motion to remand this case to the State Court of Fulton

-4-

County, Georgia, claiming that complete diversity does not exist because the Agent

Defendants share the same citizenship as Plaintiff and the Complaint states claims

against them, and because Plaintiff has not shown that federal question jurisdiction

arises under ERISA.[4]

## II.    DISCUSSION

"[A]ny civil action brought in a State court of which the district courts of the

United States have original jurisdiction, may be removed by the defendant . . . to

the district court of the United States for the district and division embracing the

place where such action is pending." 28 U.S.C. § 1441(a).  However, "[i]f at any

time before final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Where the

propriety of removal is in question, the burden of showing removal is proper is on

---

[4] Both the Fortis Defendants and Agent Defendants filed motions to dismiss on January 20, 2005, contending all claims against them should be dismissed because Plaintiff fails to state a claim upon which relief can be granted. (Mot. to Dismiss by Agent Defs. [5]; Fortis Defs.' Mot. to Dismiss or, in the Alternative, for a More Definite Statement [7].)  Because there is substantial overlap among the arguments presented in the motions to dismiss and those in the motion to remand, the Court has considered the arguments filed in support of, and in response to, the motions to dismiss to the extent they impact the Court's subject matter jurisdiction analysis.

the removing party. <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001).

Defendants' primary argument for removing this action is that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Section 1332 provides that this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332 further states that "[f]or the purposes of this section . . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." <u>Id.</u> at § 1332(c)(1). "Diversity jurisdiction, as a general rule, requires complete diversity -- every plaintiff must be diverse from every defendant." <u>Palmer v. Hosp. Auth. of Randolph County</u>, 22 F.3d 1559, 1564 (11th Cir. 1994).

Complete diversity does not exist in this case. Plaintiff and all of the Agent Defendants are citizens of the State of Georgia. (Notice of Removal ¶¶ 1, 10, 12.) Defendants argue removal is proper, however, because the Agent Defendants are fraudulently joined.

A.    <u>Fraudulent Joinder</u>

The removing party has a "heavy" burden of proving fraudulent joinder. <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997). "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." <u>Id.</u> The Court must base its decision on the plaintiff's pleadings at the time of removal, but the Court may also consider affidavits submitted by the parties. <u>Id.</u> When determining whether the case should be remanded, the Court must evaluate the factual allegations in the light most favorable to Plaintiff and must resolve any uncertainties about state substantive law in favor of Plaintiff. <u>Id.</u> "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." <u>Id.</u> (quotation and citation omitted).

> For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all

reasonable inferences from the record in the plaintiff's
favor and then resolving all contested issues of fact in
favor of the plaintiff, there need only be a reasonable
basis for predicting that the state law *might* impose
liability on the facts involved.

Id. at 1541-42 (citation and quotation omitted).

Plaintiff argues that removal of this case was improper and that remand is

required because Plaintiff has stated valid claims against the Agent Defendants.

Plaintiff claims the Agent Defendants are alleged to have been "instrumental in

procuring, issuing and delivering the small group health insurance plans at issue in

this case." (Pl.'s Mot. to Remand at 3.)  Plaintiff alleges that "the Agent

Defendants represented the policy as something it was not, . . . clearly stat[ing] a

claim for actual fraud that is apparent on the face of the Complaint." (Pl.'s Reply

to Defs.' Opp'n to Remand at 2.)  Defendants argue Plaintiff's claims against the

Agent Defendants fail because (i) Plaintiff's fraud claim against the Agent

Defendants is barred by the statute of limitations, and (ii) Plaintiff's fraud claim

against the Agent Defendants fails on the merits under Georgia law.  The Court will

first address Plaintiff's claim of fraud against the Agent Defendants.

1.   *Statute of Limitations*

Defendants claim Plaintiff's fraud claim is barred by the statute of limitations because the cause of action arose in 1996, when the Agent Defendants sold him the UMEG policy, and Plaintiff did not file his Complaint until 2005.  The Court must determine if there is any possibility that a Georgia court could find that the statute does not bar Plaintiff's fraud claims against the Agent Defendants.

The statute of limitations for fraud in Geogia is four (4) years.  O.C.G.A. § 9-3-31.  The commencement of this limitations period may be tolled, however, "if the defendant committed an act of actual fraud that had the effect of concealing from the plaintiff the existence of the cause of action despite her exercise of reasonable diligence."[5] Hahne v. Wylly, 406 S.E.2d 94, 96 (Ga. Ct. App. 1991); O.C.G.A. § 9-3-96.  "[W]here the actual fraud is the gravamen of the action . . . the statute of limitations is tolled until the fraud is discovered or by reasonable diligence

---

[5] Actual fraud implies moral guilt and is distinguished from constructive fraud which is consistent with innocence.  Shipman v. Horizon Corp., 267 S.E.2d 244, 245 n.3 (Ga. 1980).  Plaintiff alleges actual fraud, as exemplified by his allegations that "Defendant engaged in a fraudulent scheme to defraud customers by misrepresenting 'UMEG' health insurance policies to be group health insurance policies when the policies were, in fact, individual health policies," (Compl. ¶ 16), and that "Defendants are morally culpable in that they formed an immoral and fraudulent scheme to deceive the Plaintiff . . . ."  (Id. ¶ 136.)

should have been discovered."[6]  Shipman v. Horizon Corp., 267 S.E.2d 244, 246

(Ga. 1980).

"Whether a plaintiff exercised reasonable care in discovering the fraud is

generally a jury question." Fed. Ins. Co. v. Westside Supply Co., Inc., 590 S.E.2d

224, 229 (Ga. Ct. App. 2003).  Defendants claim Plaintiff did not exercise

reasonable diligence to discovery the fraud because he was put on notice of the

alleged fraud when he received his first renewal premium notice.  Defendants further

claim that Plaintiff admits, in a March 18, 2002 letter to Rogers Benefit Group, that

he has "been paying way too much since 1996."  (See March 18, 2002 Letter,

attached as Exh. 2 to Compl.; Agent Defs.' Opp'n to Pl.'s Mot. to Remand at 12.)

---

[6]  The Fortis Defendants argue that Georgia law on equitable tolling "requires
a separate, affirmative fraudulent act that is in addition to the original fraud."
(Fortis Defs.' Opp'n to Pl.'s Mot. to Remand at 11.)  The Fortis Defendants are
incorrect.  In Shipman, the Georgia Supreme Court distinguished between two
different circumstances in which actual fraud tolls the statute of limitations.  In the
first circumstance, where "the actual fraud is the gravamen of the action," "[n]o
other independent fraudulent act is required to toll the statute."  Shipman, 267
S.E.2d at 246.  The Fortis Defendants apparently refer to the "second
circumstance," "where the gravamen of the action is other than actual fraud," which
requires "a separate independent actual fraud . . . ."  Id.  In this case, the gravamen
of Plaintiff's cause of action is actual fraud.  (See n.5, supra.)  The Court further
notes that Plaintiff alleges that Defendants issued a "Group Certificate of
Insurance," and continued to issue renewal notices referring to this policy.  (Pl.'s
Reply to Defs.' Opp'n to Remand at 8.)

Thus, Defendants claim "Plaintiff clearly had notice of the higher premiums soon after purchasing the policy . . . ." (Agent Defs.' Opp'n to Pl.'s Mot. to Remand at 12.) Plaintiff argues that whether he exercised reasonable care in discovering the fraud is a detailed factual assessment that is prohibited in a fraudulent joinder analysis. (Pl.'s Mot. to Remand at 12.)

The Court's inquiry is limited to determining whether there is any possibility that a Georgia court could find that the statute of limitations has not run on Plaintiff's fraud claim against the Agent Defendants. Plaintiff has alleged he was issued a "Certificate of Group Insurance," and that he received premium renewal notices for this policy. Despite the fact that his premiums were raised almost immediately after he purchased the policy in 1996, the first affirmative disclosure by Defendants that Plaintiff's policy was actually an individual policy was a March 2002 letter, sent to Plaintiff by Rogers Benefit Group, in which Defendants stated "We have recently completed a comprehensive review of the overall experience of our individual medical plans for the past year. We determined that several changes needed to be made to the current rating structure . . . ." (See March 2002 Letter, attached as Exh. 2 to Compl.) That Plaintiff was aware of rate hikes or had previously complained about his higher premiums is not dispositive. Plaintiff does

-11-

not complain about a mere raising of his premiums. Instead, Plaintiff's complaint is that his rates were increased based on his individual risk and claims experience as opposed to on a group basis. Because it is arguable that the fraud was not discoverable until March 2002, a state court could find that the statute of limitations did not run until March 2006 and that the statute of limitations does not bar Plaintiff's claim.[7] See McBride v. Life Ins. Co. of Va., 190 F. Supp. 2d 1366, 1372 (M.D. Ga. 2002) (holding at summary judgment that "Plaintiff could not have discovered the alleged fraud in this case until . . . he began receiving documentation of the drastically increased premiums"); accord Raybon v. Am. Fid. Assurance Co., No. 2:05CV276D, 2005 WL 2002064, at *6 (M.D. Ala. Aug. 19, 2005) ("The Court agrees with [plaintiff] that it is arguable, given the absence of contradictory terms in the insurance policy, that [plaintiff] could not have deduced from the mere fact that her premiums increased that [defendant]'s representation that premium rates were assessed based on a group or class basis was false.").

---

[7] The UMEG policy does not conclusively demonstrate that Plaintiff should have been aware that his plan was not actually a group benefit plan. The UMEG policy describes his coverage as both group and individual insurance, and does not unambiguously contradict alleged misrepresentations that the plan was a group policy.

The Court emphasizes that it expresses no opinion on the merits of Plaintiff's equitable tolling argument. Instead, the Court finds that construing all factual and legal inferences in favor of Plaintiff, there is a possibility that a state court would conclude that the statute of limitations has not run on Plaintiff's fraud claim against the Agent Defendants. Accord Raybon, 2005 WL 20022064, at *6 (applying Alabama law and granting plaintiff's motion to remand); see also Fed. Ins. Co., 590 S.E.2d at 230 ("Where there are facts involving fraud and excuses for delay in discovering the same, the question is one of mixed law and fact, and is one for determination by the jury under proper instructions from the court.") (quotation and citation omitted).[8]

---

[8] Defendants also state that "since equitable tolling is an affirmative fraud, it must be stated with particularity." (Fortis Defs.' Opp'n to Pl.'s Mot. to Remand at 11.) Plaintiff's underlying fraud claims are the basis for Plaintiff's equitable tolling argument and they are pleaded sufficiently. While O.C.G.A. § 9-11-9 provides all averments of fraud must be stated with particularity, the Court notes that it is Defendants' burden to establish that there is no possibility that Plaintiff can state a claim against the resident defendants, and not Plaintiff's burden to establish his fraud claims or equitable tolling. Plaintiff has pleaded a sufficient basis for his claim of equitable tolling. See also La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint.") (quotation and citation omitted).

### 2.   *Fraud*

To state a claim for fraudulent misrepresentation under Georgia law a plaintiff must establish five elements: "(1) that the defendant made representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." Bacote v. Wyckoff, 310 S.E.2d 520, 523 (Ga. 1984). Defendants claim Plaintiff's fraud claim against the resident Agent Defendants fails because there was no misrepresentation.

Defendants' argument is that Plaintiff bases his claim against the Agent Defendants on their alleged misrepresentations that UMEG was a group health insurance policy. Defendants argue, however, that Plaintiff admits he received a group insurance policy and, therefore, the Agent Defendants did not make a misrepresentation. Defendants claim that Plaintiff's "true claims are against the Fortis Defendants for allegedly rating his group policy improperly" after the point of sale. (Fortis Defs.' Opp'n to Pl.'s Mot. to Remand at 8-10, n.6.)

The Court does not agree with the Defendants' characterization of this action. The basis of Plaintiff's fraud claim is that the Defendants concealed and

-14-

misrepresented the true nature of their group health insurance policies. Plaintiff claims that all Defendants misrepresented the policies to be group health insurance policies when, in fact, the policies and premiums were adjusted based on individual health risk and claims experience. Plaintiff, therefore, is not simply contending his group policy was rated improperly, nor is he simply complaining that his premiums were raised. Plaintiff further claims Defendants intentionally misled Plaintiff for the purpose of selling him the UMEG policy, that he relied on these misrepresentations that the UMEG policy was proper group health insurance, and that Plaintiff has sustained damages by being forced to pay increased insurance premiums. (Compl. ¶¶ 129-39.) Construing the facts and any ambiguities in the law in favor of Plaintiff, a possibility exists that Plaintiff could succeed on his fraud claim against the resident Agent Defendants. See Crowe, 113 F.3d at 1538.

Because it appears the Plaintiffs may assert a fraud cause of action[9] against the resident Agent Defendants, Defendants have failed to demonstrate they are fraudulently joined and that the Court has original jurisdiction over this case.

_____

[9] Because the Court finds Plaintiff may assert a fraud cause of action against the resident Agent Defendants, the Court does not address Plaintiff's other theories of recovery against them.

B.    Federal Question

Defendants contend that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims "may" fall under ERISA.[10]  (See Notice of Removal at 38.)  Defendants' arguments are conclusory and, in short, are that the insurance policies underlying Plaintiff's claim qualify as ERISA employee welfare benefit plans, and Plaintiff's claims are preempted by ERISA under § 514. (Fortis Defs.' Opp'n to Pl.'s Mot. to Remand at 23-24.)

The burden of showing removal is proper is on the removing party.  Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).  Defendants fail to satisfy their burden of demonstrating removal is proper because ERISA § 514 provides for "defensive" preemption, and "does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . . ." Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999).  Only "complete" preemption is sufficient to establish federal subject matter jurisdiction.  Id.  To establish complete preemption, Defendants must demonstrate:  (1) a relevant ERISA plan; (2)

_____

[10]  Section 1331 provides "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

plaintiff's standing to sue under that plan; (3) the defendant is an ERISA entity; and (4) plaintiff is seeking relief available under 29 U.S.C. § 1132(a). Id. Defendants' conclusory allegations that Plaintiff's claims are preempted by ERISA are insufficient to establish any of the elements necessary for this Court to find it has subject matter jurisdiction of this matter.[11]

C.    Attorney Fees

Plaintiff requests an award of his reasonable costs and expenses incurred as a result of the removal. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This determination is left to the discretion of the Court. See Graham Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998) ("An award of attorneys' fees is solely in the discretion of the court. A finding of bad faith or improper purpose by the removing party is not necessary."). Considering the improper nature of the

---

[11] For example, "Section 1132(a) provides a cause of action for the recovery of plan benefits and allows for the recovery of costs in bringing such a claim." Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1354 (11th Cir. 1998). Because Plaintiff does not seek the recovery of plan benefits, Defendants cannot establish that Plaintiff seeks relief available under § 1132(a).

removal here, and the delay and expense incurred as a result, the Court finds an

award of costs and expenses under 28 U.S.C. § 1447(c) is warranted.  Although

there is authority for the Court's retention of the case to determine the

reasonableness of the costs and expenses requested by Plaintiff, the Court finds

that litigating this case on dual tracks — the substantive issues in the State Court,

and the ancillary costs and expenses issue in this Court — would be inefficient and

would further delay the processing of the case.  Accordingly, the determination of

the reasonableness of the costs and fees to be awarded to Plaintiff is reserved for

the State Court.

## III.   CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand [10] and

Plaintiff's Motion for Attorney Fees [16] are GRANTED and the Clerk of Court is

DIRECTED to remand this action to the State Court of Fulton County, Georgia.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1447(c),

Defendants are required to pay to Plaintiff his reasonable costs and actual

expenses, including attorneys' fees, incurred as a result of removal.  Plaintiff shall

-18-

FILE No. Case 2:05-cv-00729-WKW-DRB    Document 12-2    Filed 02/09/2006    Page 19 of 31    PAGE 20/ 20
ID:DOUGLAS GROSE    FAX:8132516723

Case 1:05-cv-00105-WSD    Document 28    Filed 09/13/2005    Page 19 of 19

submit to the State Court within thirty (30) calendar days of this Order a detailed accounting of his reasonable costs and expenses incurred as a result of the removal.

**SO ORDERED**, this 13th day of September, 2005.


William S. Duffey

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

**[INTENTIONALLY BLANK]**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM E. ROLLIN and             )
ROLLINS USED CARS,                )
                                  )
        Plaintiffs,               )
                                  )
vs.                               )    CIVIL ACTION NO 03-0138-L
                                  )
AMERICAN MEDICAL SECURITY,        )
UNITED WISCONSIN LIFE INSURANCE   )
COMPANY, AMSOUTH BANK, N.A.,      )
                                  )
        Defendants.               )

## ORDER

This matter is before the Court on Plaintiffs' Response to the Court's Show Cause Order and

Plaintiffs' Motion to Remand (Doc. 23) filed June 4, 2003; Defendants' Memorandum of Fact and

Law in Opposition to Plaintiffs' Motion to Remand (Doc. 25) filed June 16, 2003, and Plaintiffs' Reply

to Defendants' Opposition to Plaintiffs' Motion to Remand (Doc. 27), filed June 25, 2003. Upon

consideration, and for the reasons set forth herein below, plaintiffs' motion to remand is **GRANTED.** [1]

I.    Procedural Summary

This action was initially brought by plaintiffs in the Circuit Court of Escambia County , Alabama

on or about February 10, 2003 (Doc. 1, Complaint), and centers on plaintiffs' purchase of a group

health insurance policy.  In their complaint, plaintiffs allege that "[a]t the time they applied for and

---

[1]    On April 22, 2003, the parties executed a Consent to Exercise of Jurisdiction by a United
States Magistrate Judge pursuant to 28 U.S.C. §636 (c) and Fed. R. Civ. P. 73  (Doc. 12).

1

agreed to purchase the reference health insurance policy, it was represented to them by defendant

...that this health insurance policy was a group policy which would help keep premiums at a lower,

more affordable level...[however] defendants employed a rating system that ultimately resulted in a

dramatic increase in monthly payments." (Id.)  As a result, plaintiffs canceled the policy "due to

dissatisfaction with the policy and primarily because of the increase in premiums." (Id.)  In the

complaint plaintiffs allege the following causes of action in connection with the purchase of the insurance

policy:  breach of contract; negligent, reckless, wanton conduct; fraud; suppression; breach of fiduciary

duty; negligent training and supervision and negligent procurement.  (Id.)

       On March 7, 2003, defendants filed a timely Notice of Removal (Doc. 1) to this court on the

basis of federal question jurisdiction.  Specifically, defendants assert that plaintiffs' claims, although not

identified as such in the complaint, arise under ERISA and are subject to complete preemption.  (Id.)

Defendants, American Medical Security, United Wisconsin Life Insurance Company and AmSouth

Bank, filed answers to the complaint on or about March 17, 2003. [2]  (Docs. 4, 5).  On May 16, 2003,

defendants filed a motion to dismiss plaintiffs state law claims, claims for extra-contractual damages and

demand for jury trial, pursuant to ERISA.[3]  (Doc. 17).  On June 4, 2003, in response thereto, plaintiffs

filed the motion to remand, which is presently before the Court.  (Doc. 23)


II.    <u>Superpreemption</u>

------------------

   [2] On April 30, 2003, plaintiffs moved to dismiss defendants Carlton Johnson and Johnson
Murray Insurance.  (Doc. 10) The Court granted the motion by order dated May 8, 2003.  (Doc. 13)

   [3]

Removal of a case to federal court is only proper if the case could have been initially brought in federal court. <u>See</u> 28 U.S.C. §1441 (a). Defendants have removed the instant case on the grounds of federal question jurisdiction. (<u>See</u> Doc.1, Notice of Removal) In deciding whether federal question jurisdiction exists, a court must apply the well-pleaded complaint rule, looking only at the face of the complaint and without regard to any possible affirmative defenses. <u>See</u>, <u>e.g.</u>, <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed.2d 318 (1987).[4] However, an exception exists where Congress comprehensively occupies a field of law, such that "any complaint raising this select group of claims is necessarily federal in character," thereby creating federal question jurisdiction, regardless of whether the plaintiff has framed the claims as state or federal. <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207, 1211-12 (11th Cir. 1999) (quoting <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546, 95 L. Ed.2d 55 (1987)); <u>see also</u> <u>Engelhardt v. Paul Revere Life Ins. Co.</u>, 139 F.3d 1346, 1353 (11th Cir. 1998) (completely preeempted state law claims must be recharacterized as arising under federal law for purposes of determining removal jurisdiction). This exception is known in the Eleventh Circuit as complete preemption or "superpreemption." [5] <u>Butero</u>, 174 F.3d at 1211. The Supreme Court has held that ERISA is one area in which Congress intended to provide complete preemption. <u>Metropolitan Life</u>

---

[4] Accordingly, the general rule is that a case may not be properly removed to federal court on the basis of a federal defense, including the defense of preemption. <u>Caterpillar</u>, 482 U.S. at 393, 107 S.Ct. 2425.

[5] Superpreemption is a jurisdictional question focusing on Congress' intent to make "the cause of action a federal cause of action and removable despite the fact that the Plaintiff's complaint identifies only state law claims. In the context of ERISA, "[s]uperpreemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. §1132 for loss or denial of employee benefits. <u>Butero v. Royal Maccabees Life Insurance Co.</u>, 174 F.3d at 1211.

Ins. Co. v. Taylor, 481 U.S. 58, 64-67, 107 S.Ct. 1542, 95 L.Ed. 2d 55 (1987); see also Stern v. International Business Machines, 326 F.3d 1367, 1371 (11th Cir. 2003).

"ERISA superpreemption exists when the "plaintiff is seeking relief that is available under 29 U.S.C. §1132(a). Butero, 174 F.3d at 1211 (quoting Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1330 (11th Cir. 1998). The Eleventh Circuit has found that ERISA superpreemption applies only when the following factors are present: (1) there is an ERISA plan; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks relief akin to that available under 29 U.S.C. § 1132(a) (i.e., a claim for benefits due under an ERISA plan). Butero, 174 F.3d at 1212; Love v. Fortis Benefits Ins. Co., 120 F. Supp.2d 997, 1001 (M.D. Ala. 2000).

    A.   Rollins, individually

Defendants contend that the claims of Rollins are subject to complete preemption. (Doc. 25). However, plaintiffs argue that there is no super preemption because they are not seeking compensatory relief available under §1132(a). (Docs. 23, 27) The crux of plaintiffs' complaint is that they purchased a group health policy based on representations that their insurance premiums would decrease. However, once the policy was in place a rating system was employed and the premiums actually increased. Due in part to the increased premiums, plaintiffs eventually cancelled the policy. (See Doc. 1, Complaint)

There appears to be no dispute that the group policy is an ERISA plan, and that the defendant is an ERISA entity. (See Docs. 23, 25, 27). Thus, the first and third requirements for superpreemption are satisfied. The Court next turns to the second requirement - the issue of standing. Defendants argue

that William Rollins was a participant in the plan and thus has standing to sue.  (Doc. 25, p. 9-10) [6]  It

is not disputed that Rollins is the sole proprietor of Rollins Used Cars.  Further, it is not disputed that

Rollins himself was a covered insured under the group policy.  However, as set forth in detail below,

the Court concludes that Rollins, as the sole proprietor of the company, is not a plan participant with

standing to assert claims under

§ 1132(a).  See 29 U.S.C. § 1132(a); 29 U.S.C. § 1132(a)(1)(B). [7]

The majority of circuits addressing this issue have held that an owner of a corporation cannot

occupy the dual role of both employer and employee for purposes of ERISA.  See Meredity v. Time

Ins. Co., 980 F.2d 352 (5th Cir. 1993) (under ERISA, owner of business cannot simultaneously be

employer and employee); Fugarino v. Hartford Life & Accident Ins. Co. 969 F.2d 178, 186 (6th Cir.

1992) cert denied, 507 U.S. 966, 113 S.Ct. 1401, 122 L.eD. 2D 774 (1993)( "An 'employee' and

'employer' are plainly meant to be separate entities under ERISA...Thus, a sole proprietor or sole

shareholder of a business [and his dependents] must be considered an employer and not an employee

of the business for purposes of ERISA.");  Kwatcher v. Massachusetts Service Employees Pension

Fund, 879 F.2d 957, 959 (1st Cir. 1989) (holding that "employee" and "employer" are "plainly meant

to be separate animals; ..., the twin shall never meet.").

---

[6]  This issue was not fully addressed by the parties in their briefs.  In the reply to defendants'
opposition to motion to remand, the plaintiffs state that "[d]efendants ignore the fact that William E.
Rollin is the sole owner of Rollins Used Cars." (Doc. 27, p. 2)

[7]  29 U.S.C. § 1002(7) defines a "participant" as "any employee or former employee of an
employer...who is or may become eligible to receive a benefit or any type from an employee benefit
plan which covers employees of such employer...."); 29 U.S.C. § 1132(a)(1)(B) provides that
participant or beneficiary may bring civil action "to recover benefits due to him under the terms of his
plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits".

In <u>Brech v. Prudential Insurance Company of America,</u> 845 F.Supp 829 (M.D. Ala. 1993) the

Court noted the purpose behind the enactment of ERISA as follows:

> 'Congress enacted ERISA to protect working men and women from abuses in the
> administration and investment of private retirement plans and employee welfare plans.
> The gist of ERISA's definitions of employer, employee, organization, participant, and
> beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the
> plan, fund, or program covers ERISA participants because of their employee status in
> an employment relationship, and an employer or employee organization is the person
> that establishes or maintains the plan, fund or program. Employee benefit plans exist
> solely for the advantage of employees, and employers should not partake in plan
> benefits from the inception of such plans. It is clear that Congress defined 'employ
> welfare benefit plan' with the purpose of providing protection for employees, not
> employers.

<u>Id.</u> at 834 (citations omitted) In <u>Brech,</u> the plaintiff, a sole proprietor, alleged that he changed

insurance policies based on the representations of the agent that the coverage was better and more

affordable. When the company later denied coverage on plaintiff's injury he filed suit alleging state law

claims of fraud, misrepresentation, and breach of contract. The insurer removed on the basis of ERISA

and plaintiff filed a motion to remand. (<u>Id.</u>) The Court found that the group plan [8] was an employee

benefit plan covered by ERISA as to the employees of Brech Marine & Supply, and as an employer,

Ronald Brech did not fall within the parameters of the "plan, fund or program". Accordingly, the court

concluded that Brech's state law claims did not relate to an employee benefit plan and were not

covered under ERISA. <u>Id.</u> at 835. The Court opined that "Congress did not intend persons such as

Ronald Brech as owner of the corporation which created the employee benefit plan to enjoy the rights

---

[8] The group plan was established and maintained by Brech Marine & Supply for the benefit of
employees, which consisted of the plaintiff along with his wife and two sons, who were the only
employees of the business. <u>Brech,</u> 845 F.Supp. at 830.

and remedies of ERISA." Id;  see also Loudermilch v. The New England Mutual Life Insurance Co.,

942 F.Supp. 1434, 1435 (S.D. Ala. 1996) (holding that the company's "pension plan was never an

ERISA plan as applied to [plaintiff] inasmuch as he was the sole share owner of the company and not

an employee).

    Likewise, in the present case, Rollins, as sole proprietor of Rollins Used Cars, occupies the role

of employer.  Accordingly, even though he is also an insured under the plan, he is not a plan participant

such that he would have standing to bring suit under ERISA.  Accordingly, as Rollins has no standing to

assert a claim under ERISA, superpreemption does not apply.

    In addition, defendants have not satisfied the fourth requirement for superpreemption -

defendants have not shown that the claims asserted by the plaintiffs are ones for "benefits" under

Section 1132 (a).  Plaintiffs do not allege an entitlement to benefits, rather, plaintiffs' claims relate to the

cost of the premiums as represented by the agent.  See Mehaffey v. Boston Mutual Life Ins. Co., 31

F.Supp. 2d 1329, 1334 (M.D. Ala. 1998) ("When the claims are based on a denial of benefits under

the policy or require some construction of the plan's provisions, those claims likely will "relate to" the

plan.  Conversely, when the claims do not allege entitlement to benefits or necessitate any reference to

the policy's provisions, those claims likely will fall outside ERISA's preemptive scope.")

    In Mehaffey, plaintiffs alleged fraudulent inducement and negligence or wantonness by the agent

which they asserted led them to pay a premium for a policy which was never issued.  In finding that the

claims did not "relate to" the plan such that ERISA preemption would apply, the court reasoned:

    "The Plaintiffs do not claim benefits under the policy, nor do they make reference to
    any provisions in the policy...[rather] [t]heir claims turn on the absence of a policy, not
    its interpretation.  The Plaintiffs do not need to compare the agent's representations

with the policy to prove their claims. Their claims will rise or fall on the agent's representations alone."

31 F.Supp. 2d at 1335. Likewise, in the present case, the plaintiffs' claims do not require a comparison of policies or even an interpretation of the policy itself, but rather are dependent on the agent's representations regarding the costs of the premiums.

Defendants argue that plaintiffs claims are in fact claims under Section 1132 and cites the Court to Hall v. Blue Cross/Blue Shield of Alabama, 134 F.3d 1063 (11th Cir. 1998) in support of this argument. (Doc. 25, p. 11) The Court finds that Hall is distinguishable from the instant case. In Hall, the Eleventh Circuit found that it had to look at the written policy to determine whether the plaintiff was fraudulently induced to purchase the policy. Specifically, the alleged misrepresentation turned on the scope of the coverage under the policy. 134 F.3d at 1064. In the present case, the alleged misrepresentation was as to the costs of the premiums, which the Court finds distinguishable from a claim relating to the scope of coverage. Plaintiffs' claims can be evaluated without reference to the written policy or the terms of the policy. Accordingly, the Court finds that the requirements of superpreemption have not been established as to the claims asserted by Rollins.

B.    Rollins Used Cars

Defendants concede that the claims of Rollins Used Cars are not preempted and asks the court to exercise supplemental jurisdiction over those claims. However, the Court does not reach the issue of supplemental jurisdiction, as the Court has determined that the claims of Rollins are not superpreeemted such that jurisdiction would be conferred. Under Section 1132 (a), employers are not provided with any cause of action for damages. Specifically, employers have no standing to bring suit under the

8

statute. It is undisputed that Rollins Used Cars is the "employer", and accordingly, as such, has no

standing to assert a statutory cause of action. See Butero, 174 F.3d at 1212 ("Simply Fashion's role

on ERISA's stage is "employer." Simply Fashion has no standing to assert a statutory cause of action.

Hence, Simply Fashion's claims are not superpreempted.") Accordingly, the claims asserted by Rollins

Used Cars are not superpreempted.

II.    Defensive Preemption

      The Court next addresses the issue of defensive preemption. Simple or "defensive preemption"

involves a question of whether a defense is available under federal law. Mehaffey v. Boston Mutual

Life Ins. Co., 31 F.Supp. 2d at 1332 (quoting Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir.

1989). Defensive preemption arises under ERISA's express preemption provision, 29 U.S.C.

§1144(a)[9]...[and] provides only an affirmative defense to certain state law claims...[and] does not

furnish federal subject-matter jurisdiction under 28 U.S.C. §1331. Butero, 174 F.3d at 1212.

Moreover, "defensive preemption requires the dismissal of state-law claims." Id.

      The Court concludes that there is no defensive preemption under §1144 as the plaintiffs' claims

do not relate to an ERISA plan. See Brech, 845 F.Supp at 832 (holding that the plaintiff established an

employee benefit plan for his employees and that he did not receive his coverage as part of that plan);

see also Kelly v. Blue Cross & Blue Shield, 814 F.Supp 220, 227 (D.R.I. 1993) (although the

company had established an employee benefit plan as to their employees, sole proprietor's policy was

not part of that employee benefit plan even though the policy was part of the same group insurance

_____

    [9]29 U.S.C. §1144(a) states that ERISA "shall supersede any and all State laws insofar as they
may now or hereafter relate to any employee benefit plan...." 29 U.S.C. §1144(a) (1985).

coverage)

In <u>Brech</u>, the court concluded that "[a]lthough not explicitly stated in the definition of an

"employee welfare benefit plan," ...as an employer, Ronald Brech's Prudential coverage does not fall

within the parameters of the "plan, fund, or program" established or maintained by Brech Marine &

Supply and thus, his state law claims do not relate to an "employee welfare benefit plan." 845 F.Supp

at 832.  Likewise in <u>Kelly,</u> (cited with approval by the court in <u>Brech)</u> the court reasoned:

> Regina Kelly was an employer, not an employee, under ERISA, and therefore her
> insurance could not have been obtained as part of an ERISA employee benefit plan.
> Further, even if it had been part of an ERISA plan, as neither she nor her husband
> could be participants or beneficiaries with rights to sue under ERISA, ERISA does not
> preclude their state law claims.

814 F.Supp. at 223.  The Court found that the "[the company's] payment of premiums to Blue Cross

on behalf of Regina Kelly created a contractual relationship governed by state laws [and[ [t]herefore,

ERISA [did] not preempt plaintiff's state law claims.... <u>Id</u>. at 228-229.

Likewise, Rollins as an employer, is not a participant in the plan, and accordingly, his  coverage

does not fall within the parameters of the "plan, fund, or program" established or maintained by Rollins

Used Cars.  Accordingly, the Court finds that plaintiffs' state law claims do not relate to an "employee

welfare benefit plan"and are therefore not defensively preempted.

## CONCLUSION

Based on the foregoing, the Court finds that plaintiffs' claims are not superpreempted.  Rollins

Used Cars is an "employer" and accordingly, cannot state a claim under ERISA.  Moreover, Rollins, as

sole proprietor of the business cannot wear the hat of both employer and employee, and as such, does

not have standing to bring a claim under ERISA.  Moreover, plaintiffs claims do not seek benefits under

the policy within the meaning of Section 1132(a). Accordingly, the claims are not subject to

superpreemption. Further, plaintiffs' claims are not defensively preempted as they do not relate to an

ERISA plan. Accordingly, upon consideration, plaintiffs' motion to remand is **GRANTED.**

DONE and ORDERED this <u>2nd</u> day of July, 2003

<u>/s/ Kristi D. Lee</u>
**KRISTI D. LEE**
**UNITED STATES MAGISTRATE JUDGE**